IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAOMI FAWN MARSH,<br><br>  Petitioner,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>  Respondent. | No. C 11-02096 CRB<br><br>**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** |

In this Social Security case, Petitioner Naomi Fawn Marsh seeks an order from this Court reversing the Commissioner of Social Security's final decision to deny disability benefits. See P Mot. (dkt. 18). The Commissioner has filed a cross-motion for summary judgment, see C Mot. (dkt. 23), and Petitioner has filed a reply. See P Reply (dkt. 25). Since the Court concludes substantial evidence in the record as a whole supports administrative decision, Petitioner's motion is DENIED and the Commissioner's cross-motion is GRANTED.

**I. BACKGROUND**

Petitioner suffered a work-related injury to her lower back and left hip in February 2001, P Mot. at 3, which resulted in a "[s]train of the lumbosacral back (SI joint and left hip)," but the doctor "rule[d] out radiculitis." Administrative Record ("AR") at 220-221. On July 15, 2002, Dr. John Warbritten diagnosed Petitioner with chronic moderate left hip strain and synovitis, and recommended limited conservative medical treatment. Id. at 18. In March

2007, Petitioner's diagnosis included tendonitis and bursitis of the left hip, degenerative disc disease of the lumbar spine, and multiple arthralgias consistent with fibromyalgia. Id. at 18-19.

Petitioner filed an application for Social Security Disability Insurance Benefits ("SSDIB") on November 21, 2006, alleging disability beginning October 2, 2001. Id. at 89-96. The Commissioner denied Petitioner's application initially on April 11, 2007, id. at 60-64, and upon reconsideration in June 2007. Id. at 66-70. The Notice of Disapproved Claims stated, "Although you may have some discomfort, your records show no major loss of muscle or joint functions, your reflexes and muscle strength are intact, [and] you are able to move around in a satisfactory manner." Id. at 60.

Petitioner filed a timely written request for a hearing, and Administrative Law Judge ("ALJ") David R. Mazzi heard the appeal on August 8, 2008. Id. at 16. Petitioner was represented, and an impartial Vocational Expert ("VE") testified. Id. at 23-57. The ALJ evaluated Petitioner's claim according to the five-step sequential process developed by the Social Security Administration. Id. at 16-22; 20 C.F.R. § 404.1520(a).

In his written decision, dated March 3, 2009, the ALJ addressed each of these steps in turn. AR at 16-22. At Step One, the ALJ determined that Petitioner had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to his decision. Id. at 18. At Step Two, the ALJ found that Petitioner suffers from "chronic right rotator cuff tendonitis; chronic neck and back pain, status-post a work-related injury in February of 2001 and a motor vehicle accident in March of 2002; post-traumatic bursitis of the left hip; and fibromyalgia." Id. The ALJ considered these impairments to be severe, id., meaning that they "significantly limit[ one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the ALJ determined that Petitioner's medically determinable impairments, alone or in combination, did not meet or medically equal the criteria of any section of the Listing of Impairments at 20 C.F.R., Part 404, Subpart P, Appendix 1 for the requisite period. AR at 19. Petitioner does not dispute the ALJ's aforementioned findings in Steps One through Three. P Mot. at 5.

Before proceeding to Step Four, the ALJ concluded that Petitioner possessed the Residual Functional Capacity ("RFC") to perform sedentary work,[1] "with the additional need for a sit or stand option every 20 minutes" and noted that she was "limited to simple, repetitive tasks equating to unskilled work." AR at 19. In his written report, the ALJ recognized Petitioner's "combination of pain and medication side-effects," and stated that his RFC finding "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" as well as "opinion evidence" submitted by Petitioner. Id. Petitioner contests that the ALJ's RFC finding was unsupported by evidence in the record. P Mot. at 5.

At Step Four, the ALJ determined that Petitioner was not able to perform any past relevant work. AR at 20-21. The ALJ referred to the Vocational Expert's hearing testimony, which had stated that a hypothetical employee with Petitioner's RFC could perform past relevant work as a telephone answering service supervisor or customer service representative, but that those jobs were precluded by the simple repetitive task limitation. Id.

At Step Five, the ALJ considered Petitioner's alternative employment options, given her "[RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines."[2] Id. at 21. Because Petitioner was not able to perform a full range of sedentary work, the ALJ had questioned the Vocational Expert whether simple, repetitive jobs existed for an individual with Petitioner's RFC and limitations. Id. at 48-50. The VE had responded, "there would be a plethora of sedentary jobs" available in the national and California economies, and then testified that Petitioner could work as a break lining coder or laminator.[3] Id. at 49. The VE had also affirmed that his testimony did not deviate from the information in the Dictionary of Occupational Titles ("DOT"). Id. at 52. The ALJ thus determined at Step Five that Petitioner was "capable of making a successful adjustment to other work" available in the economy and therefore was "not disabled." Id. at 22.

---

[1] "Sedentary work" is defined at 20 C.F.R. § 404.1567(a).

[2] Medical-Vocational Guidelines are listed at 20 C.F.R., Part 404, Subpart P, Appendix 2.

[3] DOT No. 574.685-010 and No. 690.685-258, respectively. AR at 49.

3

1  The ALJ concluded that Petitioner was "not under a disability, as defined in the Social Security Act, at any time from October 2, 2001, the alleged disability onset date, through December 31, 2006, the date on which she was last insured." Id. Petitioner appeals this decision. P Mot. at 1-2.

## II. LEGAL STANDARD

A district court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The record as a whole, including the evidence that supports and the evidence that detracts from the Commissioner's conclusion, must be considered. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989) (citing Jones, 760 F.2d at 995). However, if substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, and may be set aside only if an improper legal standard was applied in weighing the evidence. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); see also Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

Summary judgment is a method for disposing of an action in which there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The burden of establishing the lack of a genuine issue of material fact is on the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

1 (1986). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder
2 to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
3 248-49 (1986). A fact is "material" if it could affect the outcome of the case. See id. at 248.
4 All inferences to be drawn from the underlying facts must be viewed in the light most
5 favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
6 809 F.2d 626, 630 (9th Cir. 1987).

**III. DISCUSSION**

The Commissioner of the Social Security Administration ("SSA") is governed by a five-step sequential process when determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the Commissioner evaluates whether the claimant has engaged in Substantial Gainful Activity since filing for benefits. 20 C.F.R. § 404.1520(a)(4)(i). At Step Two, if the claimant has not engaged in SGA, the Commissioner determines whether the alleged impairment is sufficiently severe to limit the claimant's ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). At Step Three, if the impairment is sufficiently severe, the Commissioner determines whether the alleged impairment (1) is listed on the Listings of Impairments and (2) meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(iii); see 20 C.F.R. Pt. 404, Subpt. P, App. 1. At Step Four, if the impairment is not listed on the Listings of Impairments or does not meet the duration requirement, the Commissioner makes a determination of Residual Functional Capacity to evaluate whether the claimant can return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). And at Step Five, if the claimant cannot return to past relevant work, the Commissioner must determine whether the claimant can engage in other types of substantial gainful work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

In her motion for summary judgment, Petitioner advances two primary arguments why the Commissioner's decision should be overturned, both challenging the ALJ's determination of her RFC. First, Petitioner argues that the ALJ improperly discounted the opinion of David H. Betat, M.D., whom she claims is her treating physician. P Mot. at 7. Second, Petitioner

5

claims that the ALJ improperly discounted the credibility of her statements about symptoms, limitations, and pain. Id. at 8. The Court will address both of Petitioner's arguments in turn.

### A. ALJ's Treatment of Dr. Betat's Opinion

Petitioner alleges that the ALJ improperly discounted the opinion of Dr. Betat, whom she regards as her treating physician. Id. at 7. Specifically, Petitioner states, "[i]n regard to Dr. Betat's opinion, the ALJ failed to acknowledge it or mention reasons for rejecting it." Id. She argues that a treating doctor's opinion should be given special consideration and possibly "controlling weight" according to 20 C.F.R. § 404.1527(d)(2) (1991). Id. The Commissioner argues that Dr. Betat is not, in practice, Petitioner's treating physician. C Mot. at 5.

In Thomas, the Ninth Circuit ruled that "[a]lthough the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" 278 F.3d at 957 (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). However, the Ninth Circuit has also written that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation and internal quotations omitted).

Thus, an ALJ is required to set forth specific, legitimate reasons for rejecting a treating physician's opinion, but need not address it otherwise. Here, Petitioner alleges that "the ALJ omitted to anywhere acknowledge Dr. Betat as a treating physician." P Mot. at 7-8. The Commissioner claims that Dr. Betat's assessment is "not the opinion of a treating source or even a medical opinion." C Mot. at 5. Thus, the parties disagree over whether Dr. Betat is a treating physician.

The Commissioner first argues that Dr. Betat's January 31, 2006, clinical note[4] was not the opinion of a treating physician. Id. The regulations define a "treating source" as a

---

[4] Petitioner's motion directs the Court to three clinical notes written by Dr. Betat, but relies primarily on an "assessment opinion, as part of his SOAP [Subjective, Objective, Assessment, and Plan] clinic notes" dated January 31, 2006. P Mot. at 7; see AR at 498.

6

1 physician, psychologist, or other acceptable medical source "who provides . . . or has
2 provided [claimant], with medical treatment or evaluation and who has, or has had, an
3 ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502; see C Mot. at 5. A
4 treating source will see a patient "with a frequency consistent with acceptable medical
5 practice." 20 C.F.R. § 404.1502; see C Mot. at 5. However, a treating relationship must be
6 based on a "medical need for treatment or evaluation" and not "solely on [claimant's] need to
7 obtain a report in support of [a] claim for disability." 20 C.F.R. § 404.1502; see C Mot. at 5.

8 The Commissioner alleges that Dr. Betat is not Petitioner's treating physician, because
9 "at the time of the January 31, 2006 note, [Petitioner] had not seen Dr. Betat for more than
10 one year and did not see the doctor thereafter for nearly another year." C Mot. at 5; see AR
11 at 497-99. The Commissioner argues that the intervals between visits with Dr. Betat are not
12 consistent with Petitioner's alleged "ongoing, severe pain symptoms from hip, back, and
13 joint problems." C Mot. at 5. The Commissioner concludes that the long periods before and
14 after Petitioner's January 31, 2006, visit with Dr. Betat suggest that its purpose was "non-
15 medical," but instead was to have Dr. Betat complete her disability form. Id.; see AR at 498.

16 The Court recognizes that treatment gaps surrounding Petitioner's January 2006
17 appointment appear to question Dr. Betat's status as her treating physician. However, the
18 regulations described above define a "treating source" as one "who provides . . . or has
19 provided" ongoing medical treatment or evaluation. 20 C.F.R. § 404.1502 (emphasis added).
20 Petitioner's medical record indicates that she visited Dr. Betat no fewer than ten times
21 between September 2003 and December 2004. See AR at 499-508. Even if Petitioner's
22 January 2006 visit was simply intended to obtain Dr. Betat's signature on a disability form,
23 as the Commissioner alleges, see C Mot. at 5, Dr. Betat may nonetheless be considered a
24 "treating source" because he had an "ongoing treatment relationship" with Petitioner at a
25 time relevant to her SSDIB claim. See 20 C.F.R. § 404.1502.

26 An ALJ can dismiss a treating physician's opinion if his findings set forth specific,
27 legitimate reasons based on substantial evidence in the record. See Thomas, 278 F.3d at 957.
28 "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts

7

1 and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.
2 (citation and quotation omitted). Here, the ALJ's written decision did not specifically
3 address Dr. Betat's assessment opinions, see AR at 16-22, but stated generally, "I have also
4 considered opinion evidence in accordance of the requirements of 20 C.F.R. 404.1527 and
5 SSRs 96-2p, 96-5p, 96-6p and 06-3p." Id. at 19.

Although the ALJ may have found "specific, legitimate reasons" to dismiss Dr.
Betat's clinical notes, he should have directly addressed them in his written decision. See
Thomas, 278 F.3d at 957. The question before the Court is whether the ALJ's omission is
harmless error.[5] The Ninth Circuit has recognized harmless error in a Social Security
context, stating, "the court will not reverse an ALJ's decision for harmless error, which exists
when it is clear from the record that the ALJ's error was inconsequential to the ultimate
nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)
(citation and quotation omitted); see Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
("A decision of the ALJ will not be reversed for errors that are harmless."). A reviewing
court, however, "cannot consider the error harmless unless it can confidently conclude that
no reasonable ALJ, when fully crediting the testimony, could have reached a different
disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir.
2006).[6]

To determine whether the ALJ's omission was harmless, the Court must consider Dr.
Betat's opinion of Petitioner's condition. His assessments are included in a series of SOAP
clinical notes, which briefly describe Petitioner's visits.[7] AR at 496-508. Petitioner argues
that these notes rebut the ALJ's disability finding, stating, "Dr. Betat dictated that

---

[5] Petitioner submits that the Court should order payment of past-due benefits. P Mot. at 10. The Commissioner argues that, should the Court find the ALJ committed reversible error, it should be remanded for further administrative proceedings. C Mot. at 8 n.2. As the Court finds the error harmless, it need not reach this issue.

[6] In Stout, the Ninth Circuit considered whether the omission of lay testimony in a Social Security case was "harmless error." See 454 F.3d at 1056. Here, the Court considers the ALJ's omission of Dr. Betat's assessment opinion, not his testimony. See AR at 496-508.

[7] Dr. Betat wrote thirteen SOAP notes from September 2003 to November 2006, ten of which were dated on or before December 2004. AR at 496-508.

8

1 [Petitioner] was 'non-functional,' she lacked ability to concentrate, and she was apparently
2 'disabled.'" P Mot. at 7. In doing so, Petitioner overstates the certainty and, thus, the
3 weight of Dr. Betat's January 2006 assessment note. It, in fact, states, "she is <u>pretty much</u>
4 nonfunctional" and "<u>appears to be</u> disabled" but cautions that "[i]t <u>seems to be</u> legitimate,
5 although it is <u>sometimes difficult to tell for sure</u>." AR at 498 (emphasis added).

In their entirety, Dr. Betat's SOAP notes provide minimal additional insight as to Petitioner's condition. While they may refer or speak to Petitioner's medical condition, Dr. Betat's assessment notes do not reveal a substantially different picture than the one interpreted by the ALJ. See id. at 18-19, 496-508. The ALJ's written decision acknowledged that Petitioner suffers from chronic right rotator cuff tendonitis, neck and back pain, status-post, post-traumatic bursitis in the left hip, and fibromyalgia. Id. at 18-19. While Dr. Betat refers to tenderness, nerve trigger points, sensitivity, and aches and pains, see id. at 496-508, his notes do not suggest, much less objectively diagnose, additional medical conditions.[8]

Each SOAP note's Subjective category largely reiterates Petitioner's statements to Dr. Betat, while the Objective and Assessment categories are especially brief and lack sufficient detail. See id. For example, the Subjective section of Dr. Betat's August 19, 2004, note recounts his conversation with Petitioner about the effects of various medications, her description of symptoms, and Petitioner's concerns about her weight. See id. at 501. The same note's Objective section simply states, "The patient has some sciatica notch tenderness on the left, and of course, trochanteric bursal tenderness on that side, a little trigger point tenderness on the right trapezius muscle as well in the shoulder," and the Assessment section briefly notes, "The patient has multiple aches and pains, some of which are related directly to her original injury, some that may not be." Id. This does not contradict the determination of the ALJ. See id. at 16-22.

---

[8] "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Howard, 341 F.3d at 1012 (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

9

Acceptable medical opinions must "reflect judgments about the nature and severity of [claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). In this case, "the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" Magallanes, 881 F.2d at 751 (citing Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)).

The ALJ stated that he had "considered opinion evidence in accordance of the requirements of 20 C.F.R. 404.1527." AR at 19. While his written decision should have acknowledged that Dr. Betat had been Petitioner's treating physician, the Court finds that the ALJ's omission is harmless error. See Stout, 454 F.3d at 1056. Therefore, the claim that the ALJ improperly discounted Dr. Betat's opinion fails.

**B. ALJ's Credibility Finding as to Petitioner's Statements**

Petitioner alleges that the ALJ improperly discounted her statements, claiming "if her statements about symptoms, limitations, and difficulties had been accredited, [Petitioner] would have been found disabled before her DLI [Date Last Insured] due to inability to continue/sustain full-time work exertions."[9] P Mot. at 8. Petitioner refers to a form she completed in June 2007, in which she describes her daily activities and limitations. Id.; see AR at 147-153. However, in his written decision, the ALJ determined that "[Petitioner]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 20.

According to its regulations, the SSA will consider a claimant's "statements about the intensity, persistence, and limiting effects . . . in relation to the objective medical evidence and other evidence, in reaching a conclusion" as to disability. 20 C.F.R. § 404.1529(c)(4). Further, the SSA considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the

---

[9] Petitioner's Date Last Insured was December 31, 2006. AR at 16.

10

evidence." Id. Here, the ALJ found Petitioner's statements to be at least partially not credible. See AR at 19-20.

The ALJ addressed Petitioner's claim that she cannot perform work at the determined RFC, stating "[t]he medical evidence does not show pathology reasonably likely to cause the debilitating limitations alleged." Id. at 20. While an ALJ may find a claimant's allegations of severity to not be credible, the ALJ must specifically make findings which support this conclusion. Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991). These findings must be "sufficiently specific to allow a reviewing court to conclude" that the ALJ's determination was on permissible grounds and not arbitrary. Id. Petitioner alleges that the ALJ's reasons for his credibility determination were not "clear and convincing." P Mot. at 9. Petitioner is incorrect.[10]

In this case, the ALJ's credibility decision was sufficiently specific and his reasons were, in fact, clear and convincing. The ALJ stated, "The claimant's treatment has been routine or conservative in nature, and there are gaps in treatment. The claimant is not taking the medications of a type and dosage consistent with the alleged severity of her impairments." AR at 20. The ALJ further detailed instances where Petitioner deviated from her prescribed medication: "On March 18, 2007, the claimant reported to Dr. Gard that she was using only non-prescription, over-the-counter medication." Id.

Dr. Betat's SOAP clinic notes provide additional examples. On July 15, 2004, he wrote, "[Petitioner] got off of all of her medication." Id. at 502. Dr. Betat echoed this

---

[10] Petitioner further contests that the ALJ employed "backwards logic connecting [his] evaluation of symptoms and RFC." P Reply at 5; see P Mot. at 9. Petitioner references a recent Seventh Circuit decision, see P Reply at 5, which criticized an ALJ's credibility determination that a claimant's symptom reporting was "not credible to the extent [it is] inconsistent with the judge's assessment of his residual functional capacity." Shauger v. Astrue, No. 11-3232, 2012 WL 992100, at *4 (7th Cir. Mar. 22, 2012) (citation and quotation omitted). There, the Court found the ALJ's decision to be "meaningless boilerplate seen frequently in decisions from ALJs. . . . it backwardly implies that the ability to work is determined first and is then used to determine the claimant's credibility." Id. While the Seventh Circuit was correct to rule in Shauger that "[c]redibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing," see id., its finding does not apply here. Here, the ALJ's credibility determination was specifically supported by evidence in the record, as discussed above. See AR at 20. Unlike the Shauger case, the ALJ here presented clear and convincing reason for finding Petitioner's self-reporting of symptoms to be at least partially not credible. See id.; see also 2012 WL at *4-5. Because the ALJ appropriately supported his credibility determination, he need not place much weight on her statements when determining her RFC.

11

concern on January 31, 2006, writing, "[Petitioner] has gotten off of all of her medications. She has tried to treat herself just more from a psychological and natural approach," id. at 498, and again on November 7, 2006: "[Petitioner] has not seen me for a while. She weaned herself off of all medicines. She still takes occasional oral cannabis but not much else." Id. at 497. The Ninth Circuit ruled in Orn v. Astrue, "Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." 495 F.3d 625, 638 (9th Cir. 2007).

In addition to Petitioner's medical treatment history, the ALJ noted that Petitioner's reported activities undermined the credibility of her statements. See AR at 20. The ALJ wrote that "[t]he claimant was able to attend vocational rehabilitation classes in 2003, indicating activities in excess of the [RFC] found herein . . . and she reported that she cares for a six year-old child, albeit with some assistance." Id. The ALJ concluded, "Neither the medical treatment nor the claimant's activities are consistent with the alleged severity of her impairments." Id.

Petitioner's motion contends that the ALJ should not have found that "her limited work history also detracts from the credibility of her subjective allegations." P Mot. at 9 (citing id.). This point is moot. The ALJ did not base his credibility determination on Petitioner's work history, but rather mentioned the consideration in a single sentence at the end of a detailed series of credibility observations, detailed above. See AR at 20. Its omission would not materially affect the ALJ's credibility determination.

The ALJ's disability decision appropriately weighed Petitioner's statements relative to the objective medical evidence. The Court finds that his final RFC determination that Petitioner is able to perform sedentary work, "limited to simple, repetitive tasks" with an additional "sit or stand option" every 20 minutes "reasonably accommodates the limitations imposed by her conditions." Id. Furthermore, the ALJ's finding is even more restrictive than the assessments of two consultive examiners, both referred to in the ALJ's written decision, who found that Petitioner was able to perform "light work." See id.

12

Thus, Petitioner's claim that the ALJ improperly discounted the credibility of her statements about symptoms fails.

### IV. CONCLUSION

The Commissioner's final decision in this case – specifically, that Petitioner was able to perform alternative work available in the economy – was based on substantial evidence in the record as a whole. See Tacket, 180 F.3d at 1097. Consequently, this Court may set aside the denial of benefits only if the Commissioner's decision was based on legal error. See Thomas, 278 F.3d at 954. No such error exists. While the ALJ should have affirmatively acknowledged Dr. Betat as Petitioner's treating physician, Dr. Betat's assessment opinions do not reveal additional medical conditions. Thus, the ALJ's omission was harmless error. Further, the ALJ included sufficient description of his credibility determination regarding Petitioner's statements.

Accordingly, and for the foregoing reasons, the Court affirms the Commissioner's final decision by DENYING Petitioner's motion for summary judgment and GRANTING the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: April 27, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE